IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID RUEZGA,

               Petitioner,

    v.

JAMES A. YATES, Warden,

               Respondent.

_____/

No. C 06-3351 CRB

**OPINION AND ORDER**

Petitioner David Ruezga, a state prisoner incarcerated at Pleasant State Valley Prison in Coalinga, California, seeks federal habeas review under 28 U.S.C. § 2254 for a conviction of three counts of attempted murder and one count of shooting into an occupied motor vehicle. The conviction was enhanced by findings that petitioner personally discharged a firearm in committing the offenses and caused great bodily injury. The trial judge sentenced petitioner to 34 years to life.

## STATEMENT OF FACTS

Petitioner's conviction arises from his shooting a gun at an occupied car on the freeway. Petitioner did not deny the shooting; instead he claimed self defense. The California Court of Appeal summarized the facts in People v. Ruezga, No. H026552, 2005 Cal. App. Unpub. LEXIS 11317 at **4-19 (Cal. Ct. App. Dec. 6, 2005), and the Court will not repeat them here.

1

2 **PROCEDURAL HISTORY**

3    Petitioner was charged by information with four crimes. The first three counts

4 alleged that petitioner attempted to murder Antonio Chacon, Cesar Torrez, and Salvador

5 Ruiz. The fourth count alleged that petitioner discharged a firearm into an inhabited

6 motor vehicle. All of the counts alleged that petitioner committed the crimes for the

7 benefit of a street gang and that petitioner personally discharged a firearm. Count 2

8 charged that petitioner proximately caused great bodily injury by discharging the firearm.

9    A jury convicted petitioner of all four counts and found the gun use allegations

10 true and the gang allegations not true. The trial court subsequently granted petitioner's

11 motion for a new trial. The jury in the second trial convicted petitioner of all four counts

12 and found the gun allegations true.

13    On September 29, 2003, petitioner received a sentence of 34 years to life. The

14 sentence consisted of the upper term of nine years for count 2, and a consecutive term of

15 25 years to life for the enhancement of having caused great bodily injury by discharging a

16 firearm. The petitioner received concurrent terms on counts 1 and 3, and the sentence on

17 count 4 was stayed.

18    Petitioner appealed his conviction and also brought a petition for habeas corpus,

19 which the state appellate court considered with his appeal. The state appellate court

20 affirmed the petitioner's conviction and denied the petition for habeas corpus. Id. at *45.

21    Petitioner subsequently sought review from the California Supreme Court on both

22 the direct appeal and the petition of habeas corpus. The state supreme court denied the

23 petitions for review "without prejudice to any relief to which defendant might be entitled

24 after the United States Supreme Court determines in Cunningham v. California, No. 05-

25 6551, the effect of Blakely v. Washington . . . and United States v. Booker . . . on

26 California law." In re David Ruezga, No. S140392, 2006 Cal. LEXIS 3422 (Cal. Mar.

27 15, 2006); People v. Ruezga, No. S140397, 2006 Cal. LEXIS 3421 (Cal. Mar. 15, 2006).

28 //

2

*//*

**DISCUSSION**

## I.    Standard of Review

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

If a constitutional error is found, habeas relief is warranted only if the constitutional error is a structural issue or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-806 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## II.     Claims & Analysis

Petitioner raises the following claims of trial error: (1) the trial court erred in giving CALJIC No. 5.55; (2) petitioner was deprived of effective assistance of counsel when his trial attorney (a) failed to request a jury instruction for antecedent threats, (b) first presented gang evidence and then failed to object to the admission of gang evidence presented by the prosecution, (c) failed to object to the admission of inadmissible and irrelevant hearsay, (d) failed to object to evidence of a weapon having no connection to the charged crime, and (e) failed to adduce readily available evidence of Antonio Chacon's previous assault on the petitioner; (3) cumulative error of the above instructional error and ineffective assistance of counsel claims; (4) CALJIC No. 5.17 contains erroneous language regarding imperfect self-defense; and (5) CALJIC No. 8.66.1 misled the jury regarding the specific intent element of attempted murder. He also contends that the court's imposition of an upper term sentence without a jury

1  determination of facts in aggravation violated <u>Blakely v. Washington</u>, 542 U.S. 296

2  (2004).

3  //

4      **A.    CALJIC No. 5.55**

5      Petitioner claims that he is entitled to habeas relief because the trial court erred in

6  instructing the jury with CALJIC No. 5.55.  The instruction provides: "The right of self-

7  defense is not available to a person who seeks a quarrel with the intent to create a real or

8  apparent necessity of exercising self-defense."

9      Petitioner does not challenge CALJIC No. 5.55 as an incorrect statement of

10  California law; instead, petitioner argues that the evidence at trial did not support a

11  finding that petitioner sought "a quarrel with the intent to create a real or apparent

12  necessity of exercising self-defense."  He argues further that the instruction–which never

13  should have been given in the first place–is so ambiguous that it could have misled the

14  jury into believing that if petitioner initiated the quarrel he is not entitled to self-defense;

15  in other words, he argues that the jury could have ignored the "intent" part of the

16  instruction.  CALJIC No. 5.55 ("The right of self-defense is not available to a person who

17  seeks a quarrel *with the intent to create a real or apparent necessity of exercising self-*

18  *defense*.") (emphasis added).

19      Petitioner then posits that the instruction therefore lightened the prosecution's

20  burden of proving beyond a reasonable doubt that the attempted homicide was not

21  justifiable as a means of self-defense.  <u>See</u> <u>People v. Banks</u>, 67 Cal. App. 3d 379, 384

22  (1976) ("When the issue of self-defense is properly presented in a homicide case, the

23  prosecution must prove the absence of the justification beyond a reasonable doubt.").

24  This alleviation of the prosecution's burden, petitioner argues, constitutes a violation of

25  petitioner's federal due process rights.  <u>See</u> <u>Sandstrom v. Montana</u>, 442 U.S. 510, 520-21

26  (1979) ("In a criminal trial, the State must prove every element of the offense, and a jury

27  instruction violates due process if it fails to give effect to that requirement.").

28

The California Court of Appeal rejected petitioner's argument on the ground that the evidence at trial supported giving the instruction:

> Defendant admitted placing a loaded gun next to him in his car when he left his house and drove to the gas station. While at the gas station, Torrez testified that there was mutual yelling and hand gesturing between Chacon and defendant, while Ruiz and Chacon testified that defendant was the initiator of the incident. Chacon also testified that he thought it was strange that defendant was being aggressive toward him and his friends when defendant was clearly outnumbered. A reasonable interpretation of this evidence is that defendant initiated an altercation with Chacon and his friends, having prepared himself with a loaded firearm at his side, in order to have the opportunity to shoot at Chacon and kill him.

Ruezga, 2005 Cal. App. Unpub. LEXIS 11317, at *21. The court further determined that even if the instruction was given in error, any error was harmless because the trial court instructed the jury to disregard instructions which applied to facts the jury determined did not exist. Id. at *21-22.

The California Court of Appeal's rejection of petitioner's claim was not contrary to nor did it involve an unreasonable application of cleared established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

First, the court's finding that the evidence supported giving the instruction was not unreasonable. Moreover, petitioner has not shown that even if the evidence did not support the instruction, the error was not harmless in light of the trial court's instruction to disregard instructions not supported by the facts.

Second, CALJIC No. 5.55 is not ambiguous and did not allow the jury to rule out self-defense solely with a finding that petitioner sought out a quarrel with the Chacon group. The instruction did not preclude a theory of self-defense unless the jury also found that petitioner intended to seek a quarrel with the intent to create a real or apparent necessity of exercising self-defense. Therefore, petitioner is not entitled to federal habeas relief on his instructional error claim. See 28 U.S.C. § 2254(d).

## B.     Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was constitutionally ineffective on four grounds. First, counsel failed to request a jury instruction that a person is entitled to act

more quickly and harshly in self-defense when he has previously been subjected to threats by the alleged victim. Second, counsel first presented gang evidence and then failed to object to admission of gang evidence presented by the prosecution. Third, counsel failed to object to the admission of prejudicial evidence, including testimony from Chacon that he heard that the defendant had been in confrontations in the area before and evidence that a nine-millimeter semiautomatic handgun was seized from petitioner's home subsequent to the shooting. And, fourth, counsel failed to "adduce readily available evidence of Chacon's 1996 or 1997 assault on petitioner."

In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must establish two things. First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. Id. at 689. A habeas petitioner has the burden of showing that counsel's performance was deficient. Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990). Similarly, he must "affirmatively prove prejudice." Strickland, 466 U.S. at 693.

### 1.     Failure to Request the Antecedent Threats Jury Instruction

Petitioner first alleges that his trial counsel was ineffective for failing to request a jury instruction on antecedent threats and assaults as they relate to self-defense. Under California law, a person acting in self-defense is entitled to act more quickly and harshly when there have been prior assaults or threats on the defendant by the victim. See People

7

v. Minifie, 13 Cal. 4th 1055, 1065-66 (1996). Current CALJIC No. 5.50.1 provides an instruction on antecedent threats:

> Evidence has been presented that on [a] prior occasion[s] the alleged victim [threatened] [or] [assaulted] [or participated in an assault or threat of physical harm upon] the defendant. If you find that this evidence is true, you may consider that evidence on the issues of whether the defendant actually and reasonably believed his life or physical safety was endangered at the time of the commission of the alleged crime.
>
> In addition, a person whose life or safety has been previously threatened, or assaulted by another is justified in acting more quickly and taking harsher measures for self-protection from an assault by that person, than would a person who had not received threats from or previously been assaulted by the same person.

A defendant is entitled to such an instruction where the evidence shows the defendant reasonably and honestly believed the victim's previous threat posed a danger. See People v. Moore, 43 Cal. 2d 517, 527-529 (1954); People v. Pena, 151 Cal. App. 3d 462, 475 (1984); People v. Bush, 84 Cal. App. 3d 294, 302-303 (1978). California courts have reasoned that the antecedent threats instruction is necessary because the jury might not believe it can consider antecedent threats given that the standard instructions on self-defense refer to the defendant's fear of "imminent" serious bodily injury or death and the "immediate" circumstances of the event. People v. Torres, 94 Cal. App. 2d 146, 153 (1949). The California Supreme Court has determined that the failure to give an antecedent threat instruction when it is supported by the evidence is reversible error. Moore, 43 Cal. 2d at 521-522.

The California Court of Appeal rejected petitioner's claim that counsel's failure to request the antecedent threat jury instruction constituted ineffective assistance of counsel on the ground that petitioner had not demonstrated that he was prejudiced. The state court reasoned:

> The evidence presented at trial raised the question of whether or not defendant acted in self-defense at all, not whether he may have acted too quickly or too harshly in self-defense. If the jury believed defendant's story that Torrez followed him to the gas station, rear-ended him twice, followed him onto the freeway, swerved at three times defendant [sic] in an attempt to run defendant off the freeway, and that defendant reasonably believed Chacon was holding what appeared to be a gun, then defendant would have a valid claim of self-defense. The People asserted at trial that none of these

8

things happened; instead, defendant sought a confrontation with Chacon in order to shoot him. The evidence presented the simple question of whether defendant acted in self-defense at all, not whether he acted too quickly; the mere fact that Chacon had threatened defendant in the past does not require the giving of the antecedent threats instruction.

*Ruezga*, 2005 Cal. App. Unpub. LEXIS 11317, at *25-26.

As the state court's ruling was based on the prejudice prong, the Court will assume that trial counsel's failure to request the instruction fell below an objective standard of reasonableness. The question for this Court, however, is whether the state court's conclusion that petitioner has not established prejudice is unreasonable.

Not receiving the antecedent threat instruction may have caused the jury to believe it could only consider the immediate circumstances of the incident when evaluating the reasonableness of petitioner's actions. Torrez and Chacon agree that once the Chacon group spotted petitioner on the freeway, Torrez accelerated to pass petitioner. Chacon admits that he "made hand gestures toward defendant and mouthed 'F-you.'" If the jury did not believe petitioner's version of events--that Torrez rear-ended him and swerved toward him three times--they still considered the self-defense claim in light of how Torrez, Chacon and others portrayed the incident.

If, however, the jury had been instructed that it could also consider the July 2000 altercation between Chacon and petitioner to determine whether petitioner reasonably and honestly believed his life or physical safety was endangered, the jury may have considered petitioner's self-defense in a different context. Petitioner testified that during the July 2000 incident he heard Chacon's brother tell Chacon "to run home and go get the gun and come back." The question for the jury, then, would have been whether petitioner had a reasonable belief that he was in danger when he saw the Chacon group pull up beside him, yelling and making hand gestures in light of the previous threat to get a gun.

The California Court of Appeal did not consider the effect the antecedent threat instructions may have had on the jury's understanding of petitioner's actions when evaluating the second prong of the Strickland test. This approach is particularly questionable given that California courts have held that not instructing the jury on the

9

effect of antecedent threats is reversible error. <u>Pena</u>, 151 Cal. App. 3d at 478. Nevertheless, the Court cannot conclude that the state court's conclusion that counsel's failure did not undermine confidence in the outcome of the trial was objectively unreasonable. Even if the trial court had specifically instructed the jury that it could consider the July 2000 incident, the Court cannot conclude that there is a reasonable probability that it would have made a difference in light of the jury's likely rejection of petitioner's other testimony, the fact that petitioner never saw Chacon in possession of a gun in July 2000, and the evidence that petitioner discharged a firearm into an occupied vehicle on the freeway. Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Presentation of Gang Evidence and Failure to Object to Admission of Gang Evidence Presented by the Prosecution

Petitioner also alleges his trial counsel was ineffective in opening the door to gang evidence and then failing to preclude and limit the prosecutor's attempts to augment the evidence against petitioner. Petitioner bases this claim on trial counsel's elicitation of petitioner's former association with the Mountainview Surenos (MVS) and counsel's failure to object to the prosecution using this evidence on cross-examination and rebuttal. Petitioner claims not only that trial counsel acted incompetently but also that the California Court of Appeal's determination that the introduction of gang evidence did not prejudice the defense is objectively unreasonable.

The California Court of Appeal explained:

> Before the second trial, defense counsel moved to exclude all references to street gangs. The prosecutor conceded that some of the gang evidence that was admitted in the first trial would no longer be relevant, because the jury had acquitted defendant of the gang enhancement; however, the prosecutor argued that some gang evidence should be admitted, because "the gang context . . . can't be eliminated from this case . . . ." Defense counsel agreed, and argued that although there was a "gang flavor" to the case, the gang testimony of the prosecution's expert in the first trial, Timothy Ahearn, could be prejudicial. The court considered the issue, and took the question of whether Ahearn could testify under submission, ruling that Ahearn would not be permitted to testify until there was testimony from other witnesses that raised the issue of gang connections.

During trial, there was no introduction of gang evidence until defendant testified about his own connection to gangs on direct examination. Defendant admitted that he had been associated with the "MVS" when he was living in Mountain View, but that he had ceased his activities with the gang when he met the mother of his child, Segura in 1994.

During cross-examination, the prosecution began asking defendant questions about his affiliation with the MVS gang. Defense counsel objected, but the court overruled the objection on the basis that the defense had opened the door on the subject during direct examination. On cross, defendant admitted his previous membership in the MVS, and his awareness the MVS members had committed crimes. Defendant also admitted that he had the word "Listo" (meaning "ready") tattooed on the back of his neck, but that the tattoo had been removed in 1997 or 1998. Defendant also admitted that in 1994, he was in a car with other MVS members when they participated in a drive-by shooting with a shotgun. Defendant claimed he was asleep in the car at the time.

During rebuttal, the prosecution called a police officer who investigated the 1994 drive-by shooting incident, as well as Timothy Ahearn as a gang expert. The police officer testified the 1994 incident was a "drive-by shooting" that occurred outside a "liquor store/7 Eleven." During his interview with the officer, defendant identified two of the possible shooters. Defendant was not charged in the incident.

Ahearn was qualified as an expert on gangs, and testified that that MVS had approximately 75 members who committed crimes, such as attempted murders and assaults. Ahearn also testified that a gang member would lose a great deal of respect if he lost a fight in front of his house and his children, and that after such a loss, a gang member would commit a "serious attack" in revenge. This revenge attack would involve a weapon, and, in his opinion, it would be "advantageous" to use "a 9mm handgun."

Ruezga, 2005 Cal. App. Unpub. LEXIS 11317 at *26-29.

Petitioner first argues that trial counsel's decision to introduce gang evidence was not competent nor a rational tactical choice. Nor, petitioner argues, did trial counsel make informed, rational, competent tactical choices by not objecting to the prosecution's subsequent introduction of gang evidence after trial counsel opened the door to such evidence. Petitioner also calls attention to trial counsel's failure to object to profile evidence, to object to questions about petitioner's gang tattoo, and to request a limiting instruction regarding the gang evidence. Respondent answers that trial counsel did have a tactical reason for introducing gang evidence and then not objecting to its use by the prosecution: the gang evidence provided support for the self-defense theory where Chacon, a member of the Nortenos, persecuted petitioner, who Chacon considered a

Sureno. Not only could defense counsel use this gang affiliation to support the self-defense theory, but trial counsel may have also intended to discredit the Chacon group.

//

Defense counsel did refer to gang affiliations in his closing argument, perhaps in an attempt to bolster the self-defense argument, arguing that Chacon, a Norteno, did not want petitioner living in the neighborhood, among other references.[1] The prosecution also briefly mentioned gang affiliation in the closing to rebut petitioner's characterization of the Surenos as a social club.

The California Court of Appeal observed that "[w]ithout question, the admission of gang evidence is damaging to a defendant, and should be excluded absent a showing of relevancy." Id. at 29-30. The state court, however, without considering the first prong of the Strickland test, rejected the ineffective assistance of counsel claim based on gang evidence because it did not find that "it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." Id. at 30. The state court reasoned that the prosecution's case-in-chief, which did not reference gang evidence, "was extremely damaging" to the defendant; for example, the jury had learned that petitioner had shot into the Mustang, hit Torrez, the occupants of the Mustang were not armed, and petitioner did not sustain any damage to his person or vehicle. The jury also heard testimony from eyewitness Huezo that petitioner fired a second round of shots. In addition, the state court noted that the prosecutor framed the highway shooting as one of revenge for the July 2000 assault on petitioner and his brother, but the prosecution did not mention any gang affiliations as a motive for the shootings. The state court concluded

---

[1] Defense counsel argued in closing: "We know that he was a blue, his reputation was of a blue affiliation, and he's living in a red neighborhood . . . And we know from Lieutenant Ahearn that Anthony Chacon vocalized . . . he didn't want my client living in his neighborhood."

1  that it could not say that but for the admission of gang evidence, a different outcome

2  would have occurred.

3      The California Court of Appeal's rejection of this claim based on the second prong

4  of Strickland was not contrary to nor did it involve an unreasonable application of clearly

5  established Supreme Court precedent, nor was it based on an unreasonable determination

6  of the facts. Petitioner does not point to any United States Supreme Court case that

7  supports his argument. Defense counsel's decision to mention gang affiliation may have

8  been an attempt to strengthen the self-defense argument. In addition, in light of the other

9  evidence presented at trial, the Court of Appeal's determination that the introduction of

10  gang evidence did not prejudice petitioner was not unreasonable. Accordingly, petitioner

11  is not entitled to federal habeas relief on this ineffective assistance of counsel claim. See

12  28 U.S.C. § 2254(d).

### 3.    Failure to Object to Admission of Irrelevant Hearsay

14      Petitioner also claims that he was deprived of his right to effective assistance of

15  counsel by trial counsel's failure to object to irrelevant hearsay, and in particular, to the

16  following statement by Chacon: "And I just heard some stuff. Like, he got in a few

17  confrontations with people in the area." The California Court of Appeal rejected this

18  claim for relief because it found that the statement was not hearsay; rather it showed

19  "how [Chacon] felt about defendant, and the fact that the did not trust defendant, not the

20  truth of whether defendant had been involved in any confrontations." Petitioner argues

21  that the California Court of Appeal's application of the first prong of the Strickland test

22  was objectively unreasonable because the state court's explanation for the admissibility of

23  Chacon's statement was a "retrospective assessment."

24      Petitioner does not cite any case that suggests the state court's determination that

25  the evidence was non-hearsay was incorrect. Even if he had, however, petitioner has not

26  cited any case that suggests counsel's failure to object--an objection which presumably

27  would have led to a limiting instruction, not the exclusion of evidence--rises to the level

28  of constitutional ineffective assistance. Moreover, although the jury may have used the

statement for a prohibited purpose--namely, its truth that petitioner had gotten in a few altercations in the past--the statement did not prejudice the outcome of the case since the prosecution presented physical evidence of the altercation on the freeway and evidence of an earlier confrontation between petitioner and Chacon.  Accordingly, petitioner's claim for habeas relief for ineffective assistance of counsel based on the failure to object to irrelevant hearsay is denied.

### 4.  Failure to Object to Admission of Weapon Having No Connection to the Charged Crime

Petitioner also claims that trial counsel was ineffective for failing to object when the prosecution introduced a nine-millimeter handgun found in petitioner's Burntwood Court home during a search a few days after the shooting.  As support for his argument he cites People v. Henderson, 58 Cal. App. 3d 349 (1976), in which the California Court of Appeal held that  "evidence of possession of a weapon not used in the crime charged against the defendant leads logically only to an inference that defendant is the kind of person who surrounds himself with deadly weapons--a fact of no relevant consequences to a determination of the guilt or innocence of the defendant." Id. at 360.  Consequently, petitioner argues that a timely objection by his trial counsel would have had to be sustained.  At trial, petitioner claimed that the gun belonged to his brother-in-law, who also lived in the house.

The California Court of Appeal rejected this claim, reasoning that the gun evidence was admissible to refute petitioner's claims that he had left his gang affiliation behind, had never used a nine-millimeter handgun before the incident, and did not really know how to shoot a gun.

The state court's determination that the evidence was admissible to refute petitioner's claims was not unreasonable and distinguishes this case from Henderson. Petitioner does not cite any case--state or federal--that suggests the state could not admit the gun to refute petitioner's claims.  Therefore, petitioner is not entitled to federal habeas relief on this ineffective assistance of counsel claim.  See 28 U.S.C. § 2254(d).

### **5**.     **Failure to "Adduce Readily Available Evidence of Antonio Chacon's 1996 or 1997 Assault on Petitioner"**

Lastly, petitioner contends that trial counsel was ineffective for failing to adduce evidence from petitioner's brother, Fernando Ruezga, regarding an assault on petitioner committed by Chacon in 1996 or 1997. According to petitioner, trial counsel knew about the assault prior to the trial. In his traverse, petitioner gives the following account of the 1996 or 1997 assault:

> Fernando and petitioner were in front of their sister's house on Burntwood Court. A car pulled up on the adjacent side street and a group of men got out. Among them was Antonio Chacon. The men picked up some rocks and threw them at petitioner and Fernando, who took shelter behind a van parked in the driveway. The group then directed the rocks at the house itself, breaking some windows. Chacon was one of the rock throwers.

Traverse at 24-25.

Petitioner first raised this issue in his state habeas petition, which was denied without a statement of reasons. This Court has the authority, however, to conduct independent review of the record to ascertain whether the state court was objectively unreasonable in rejecting the claim in the state habeas proceedings. See Himes v. Thompson, 336 F.3d 848, 853 n.3 (9th Cir. 2003).

"A lawyer who fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict renders deficient performance." Avila v. Galaza, 297 F.3d 911, 919 (9th Cir. 2002) (internal quotations marks and citation omitted). Here, however, the missing evidence did not demonstrate factual innocence nor raise sufficient doubt as to that question. Due to the evidence before the jury about the July 2000 assault, in which Chacon engaged in a confrontation with petitioner and petitioner's brother, trial counsel may have reasonably decided that evidence of the 2000 account alone supported the self-defense theory that petitioner was aware of Chacon's violent behavior. Moreover, petitioner concedes that trial counsel did speak with Fernando Ruezga about the assault, but chose not to present it at trial. Trial counsel,

therefore, may have adequately investigated the evidence but made a tactical decision not to introduce it at trial.

Regardless of whether trial counsel acted incompetently in failing to adduce this evidence from Fernando Ruezga at trial, any error did not prejudice petitioner because there is not a reasonable probability that the result of the case would have been different considering the neutral eye witness testimony of Huezo and the already existing evidence before the jury about the July 2000 altercation. The 1996 or 1997 assault was not only more remote in time, but it was also less serious than the July 2000 altercation as no mention of retrieving a gun occurred in the earlier incident.

Accordingly, the state court did not act unreasonably in rejecting this ineffective assistance of counsel claim. This claim for relief is denied.

## C.     Cumulative Prejudice

Petitioner also argues that the cumulative effect of the instructional error and ineffective assistance of counsel claims, when considered in the aggregate, deprived him of his constitutional right to a fair trial and entitle him to relief. "Prejudice may result from the cumulative impact of multiple deficiencies." Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc). "[E]ven if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.' " Killian v. Poole, 282 F.3d 1204, 1211 (9th Cir. 2002) (quoting United States v. De Cruz, 82 F.3d 856, 868 (9th Cir. 1996)).

Petitioner claims that if the multiple alleged ineffective assistance of counsel and instructional errors had been removed from his case, the jury would see him in a different light:

> Had the case been properly litigated, the jury would have viewed [petitioner] as a person who had a right to act quickly and harshly in self-defense due to the prior assault committed by the Chacon brothers and the threat of death which accompanied it. In examining [petitioner's] conduct in light of this principle, the jury would not have known that he was a gang member who had associated with violent people. The jury also would have lacked knowledge that [petitioner] regularly confronted people and kept a gun and 99 rounds of ammunition at home. Finally, and most importantly,

16

> the jury would not have been faced with CALJIC No. 5.55, which
> precluded that consideration of [petitioner's] theory of self-defense.

Petitioner consequently argues that the multiple errors had a substantial and injurious

impact on his case.

//

The California Court of Appeal rejected this argument on the ground that

individually none of the claims constituted error. In addition, the state court decided that

together the above claimed errors did not "rise to the level of reversible and prejudicial

error."

The state court's rejection of petitioner's claim was not an unreasonable

application of federal precedent. In light of the Court's rulings above, the only potential

error to consider for an evaluation of cumulative prejudice is the failure to request an

antecedent threat instruction, an error that the Court has already concluded was harmless.

In addition, even if petitioner had succeeded in proving additional errors, the

alleged errors do not rise to the level of prejudicial harm, or at least, the state court's

determination that they do not is not unreasonable. While the image of petitioner

presented to the jury in the absence of the alleged errors would have been slightly

different due to the omission of gang references, evidence of a gun in petitioner's house,

and a suggestion that petitioner often confronted people, the jury still would have been

presented with physical evidence of the freeway confrontation as well as eyewitness

testimony from Huezo, evidence which points to petitioner's guilt. Consequently, the

state court was not objectively unreasonable in deciding that the cumulative effect of the

claimed errors did not rise to the level of reversible and prejudicial error. This claim for

relief, too, is denied.

### D. CALJIC No. 5.17 - Imperfect Self-Defense

Petitioner also claims that California's instruction on imperfect self-defense

(CALJIC No. 5.17), which the trial judge gave at petitioner's trial, contains "erroneous

language that misstated the law of imperfect self-defense and effectively negated it." In

particular, petitioner challenges the instruction that imperfect self-defense "is not available, and malice aforethought is not negated, if the defendant by his unlawful or wrongful conduct created the circumstances which legally justified his adversary's force, attack or pursuit." He argues that the instruction does not explain the term "unlawful or wrongful conduct" and that the jury may have believed that his conduct at the gas station constituted wrongful conduct and negated his self-defense claim.

The California state court rejected this claim. First, the court determined that the jury instruction correctly states the law as set forth in In re Christian S., 7 Cal. 4th 768 (1994). As a result, it was petitioner's duty to request a clarification or amplification of the instruction, and having failed to do so, petitioner cannot now complain about the wording. Second, the state court concluded that "[e]ven if the jury instruction could be interpreted as defendant urges, there is still no cause for reversal . . . because there is no likelihood the jury was misled." If the jury believed defendant's version of events supporting his self-defense theory, petitioner did not create circumstances "legally justifying" Torrez's actions, which included ramming petitioner's car and attempting to run petitioner off the freeway. Therefore, the jury could not have rejected petitioner's self-defense claim based on a belief that petitioner engaged in "wrongful conduct" at the gas station.

The California state court is the "ultimate expositor of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). This Court will not review a state court's interpretation of its own law unless that interpretation "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of the rights guaranteed by the Constitution." Knapp v. Cardwell, 667 F.2d 1253, 1260 (9th Cir. 1982); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."); Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) (observing that "[a] state court has the last word on the interpretation of state law").

Petitioner has not demonstrated that the state court's interpretation of the state law jury instruction is untenable. Moreover, petitioner has also not demonstrated that the state court's finding of no prejudice is unreasonable. The state court considered petitioner's interpretation of the jury instruction and concluded that even if the jury was misled, it could not have rejected petitioner's self-defense theory based on his "wrongful conduct" at the gas station because such conduct did not legally justify the actions petitioner claimed Torrez took against petitioner on the freeway. Therefore, even if the jury read the instruction as petitioner contends it could, it was not unreasonable for the state court to conclude that any ambiguity in the jury instruction did not prejudice petitioner. Accordingly, petitioner is not entitled to federal habeas relief on this instructional error claim.

### E.    CALJIC 8.66.1 - Specific Intent Required for Attempted Murder

Petitioner also challenges CALJIC No. 8.66.1, the kill-zone instruction. The version of the instruction the trial judge gave in petitioner's trial reads in part:

> A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk . . . The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity.

Petitioner claims that this instruction was flawed because it did not clarify the requirement that the defendant must have intended to kill each victim. In addition, petitioner argues that the word "harm" misled the jury to believe that intent to harm is sufficient to convict a defendant of attempted murder. He notes that after his trial the CALJIC instruction was changed to substitute "intended to kill" and "killing" for the words "harm" and "harming." Consequently, petitioner argues that the instruction was reasonably likely to be applied unconstitutionally, resulting in a violation of the Due Process Clause of the Fourteenth Amendment.

The California Court of Appeal rejected petitioner's argument. First, the state court held that the original jury instruction does not instruct the jury to convict on a

finding of a lesser intent than intent to kill and could not mislead the jury into believing that an attempt to harm rather than an attempt to kill could support a murder conviction; the instruction specifically states that a person who primarily "intends to kill one person" may also "intend to kill" others in the zone of risk. Second, the court observed that the subsequent improvement to CALJIC 8.66.1 does not mean the original instruction prejudiced petitioner. The court examined the instruction in the context of the entire case and concluded that it was not "reasonably probable" petitioner would have obtained a more favorable outcome in the absence of the alleged instructional error; the court determined that clarifications by both the defense counsel and the district attorney were clear and correct explanations of the law. In light of these considerations, the California Court of Appeal concluded that the jury instruction could not have misled the jury.

In reviewing a jury instruction for error, the Court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. See Estelle, 502 U.S. at 72. To prevail on this claim, petitioner must show that the state court unreasonably applied federal law, that is, that the state court acted unreasonably in determining that there was not a reasonable likelihood that the jury applied the instruction in a constitutionally suspect way.

In their closing arguments both the prosecution and the defense referenced the "kill zone" instruction. The prosecutor paraphrased the instruction and concluded: "Whether a perpetrator actually intended to kill the victim, either as a primary target, or as someone within a 'kill zone,' is an issue to be decided by you." RT 1555. Defense counsel clarified: "He [the prosecution] either has to show that my client specifically intended to kill Mr. Ruiz, specifically intended to kill Mr. Torrez, or that he specifically intended to kill anybody in the car as long as he got whoever his primary target was to ensure he got his primary target." RT 1619. Both of these statements emphasized the intent to kill required to convict petitioner despite the use of "harm" and "harming" in the instruction. It is not reasonably probable viewing the instruction in its entirety and statements made by both defense counsel and the prosecution that the jury believed it could convict

petitioner with a mere finding of intent to harm those in the kill zone. Therefore, the California Court of Appeal's conclusion that any error did not mislead the jury is not an unreasonable application of federal law. This claim for relief is denied.

//

//

### F. **Blakely** Error

Petitioner claims that the trial court's imposition of the upper term sentence denied him his right to a jury trial on the aggravating factors. Petitioner bases his claim on Blakely v. Washington, 542 U.S. 296 (2004), and prior cases interpreting the Sixth Amendment right to trial by jury.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury and is applicable to state criminal proceedings via the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 149-150 (1968). In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights under the Sixth Amendment by extending the right to trial by jury to the fact finding used to make enhanced sentencing determinations above the statutory maximum for an offense. In subsequent cases, the Supreme Court explained that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court and not by the jury beyond a reasonable doubt. Id. at 233-38.

Under the California sentencing scheme, a trial judge can impose one of three sentencing ranges: a lower, middle or upper term. In petitioner's case, the trial judge imposed the upper term based on aggravating factors allegedly found by the trial judge. On review, the California Court of Appeal disagreed with petitioner's contention that

imposition of the aggravated term on Count 2 violated his constitutional right to a jury trial. In so holding, the court relied on <u>People v. Black</u>, a California Supreme Court decision holding that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." <u>Ruezga</u>, 2005 Cal. App. Unpub. LEXIS 11317 at *45 (quoting <u>People v. Black</u>, 35 Cal. 4th 1238, 1244 (2005)). The California Supreme Court rejected the <u>Blakely</u> error claim in the state habeas petition "without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in <u>Cunningham v. California</u> the effect of <u>Blakely v. Washington</u> and <u>United States v. Booker</u>, on California law." <u>In re David Ruezga</u>, 2006 Cal. LEXIS 3422 *1.

Since the completion of petitioner's state habeas proceedings the United Supreme Court decided <u>California v. Cunningham</u>, 127 S. Ct. 856 (2007), overruling <u>Black</u> and holding that California's determinate sentencing law (DSL) violates the Sixth Amendment because it allows the sentencing court to impose an elevated sentence based on aggravating facts found by a preponderance of the evidence. <u>Id.</u> at 860, 871. The Court determined that for purposes of <u>Blakely</u>, the middle term in California's sentencing scheme, not the upper term, is the statutory maximum. With this holding, the Court then left "the ball . . . in California's court" to adjust the state's sentencing structure in light of the Court's decision. <u>Id.</u>

Respondent urges that petitioner's <u>Blakely</u> claim should be stayed and held in abeyance to allow the state court to consider the effect of <u>Cunningham</u> on the trial judge's sentencing determination. In the alternative, respondent argues that <u>Cunningham</u> cannot be applied retroactively. Petitioner replies, however, that his claim *is not based on Cunningham*; rather, his claim is that the state court's decision here (and thus the California Supreme Court's decision in <u>Black</u>) was an unreasonable application of <u>Blakely</u>. In light of petitioner's expressed disavowal of any reliance on <u>Cunningham</u>, the Court will consider petitioner's <u>Blakely</u> claim.

Petitioner must show that the state court's determination that <u>Blakely</u> did not render California's sentencing system unconstitutional was an "objectively unreasonable" application of Federal law. <u>Williams</u>, 529 U.S. at 409. "Objectively unreasonable" means something more than merely incorrect. <u>Id.</u> at 410-11. The Court must not "conflat[e] error (even clear error) with unreasonableness," for the former "fails to give proper deference to state courts." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003). "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule. . . . The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

The Court cannot conclude that the state court's determination was objectively unreasonable. First, the court relied on binding precedent; namely, the California Supreme Court's decision in <u>Black</u>. For petitioner to prevail, this Court would have to hold that the six out of seven justices who voted with the <u>Black</u> majority were not just wrong, but that they were unreasonably wrong. Moreover, the California Supreme Court was not alone. There were three dissenters in <u>Cunningham</u>, members of the United States Supreme Court, who agreed with the reasoning of <u>Black</u>. And, as this Court has previously noted, at least three other state high courts concluded before <u>Cunningham</u> that their states' sentencing regimes--which operate similar to California's-- were not unconstitutional under <u>Blakely</u>. <u>Marquez v. Evans</u>, 2007 WL 2406867 (N.D. Cal. Aug. 20, 2007) (citing <u>State v. Lopez</u>, 123 P.3d 754, 761-68 (N.M. 2005); <u>State v. Gomez</u>, 163 S.W.3d 632, 661-62 (Tenn. 2005); <u>State v. Maugaotega,</u> 114 P.3d 905, 916 (Haw. 2005)). The state court's decision here, while ultimately incorrect, was not objectively unreasonable. <u>See</u> <u>Bailey v. Newland</u>, 263 F.3d 1022, 1032 (9th Cir. 2001) (stating that a difference of opinion among courts of appeal on an issue means the state court's resolution of the issue is not an unreasonable application of Federal law).

//

//

//

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. Petitioner's motion for an evidentiary hearing is also DENIED. The Court has not relied on trial counsel's letter in rejecting petitioner's ineffective of assistance claims; thus, there is no need for petitioner to challenge the credibility of the statements in that letter. Petitioner has not identified any other evidence that would be material to the Court's decision on his habeas petition.

**IT IS SO ORDERED.**

Dated: January 31, 2008                    _____

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE